108 F.3d 330
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Roman MORDUKHAEV and Aaron Mordukhaev, Defendants-Appellants.
 Nos. 96-1496(L), 96-1497.
 United States Court of Appeals, Second Circuit.
 March 10, 1997.
 
 1
 APPEARING FOR APPELLANTS: Daniel M. Felber, Balsam, Felber & Fabian, New York, N.Y.; Robert DiDio, Boca Raton, FL.
 
 
 2
 APPEARING FOR APPELLEE: Timothy Macht, Asst. U.S. Atty., Brooklyn, N.Y.
 
 
 3
 Present: NEWMAN, Chief Judge, and KEARSE, and FRIEDMAN,* Circuit Judges.
 
 
 4
 This cause came on to be heard on the transcript of record from the United States District Court for the Eastern District of New York and was taken on submission.
 
 
 5
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgments of the District Court are hereby AFFIRMED.
 
 
 6
 Aaron and Roman Mordukhaev appeal from the July 26, 1996, judgments of the United States District Court for the Eastern District of New York (Korman, J.) convicting them, after a jury trial, of attempting to export stolen vehicles in violation of 18 U.S.C. §§ 553(a)(1) and (2), and conspiracy to export stolen vehicles in violation of 18 U.S.C. §§ 371 and 553(a)(1). Both appellants contend that the Judge's conduct during trial demonstrated a bias against them and that they were thereby deprived of their right to a fair trial. In addition, Aaron contends that it was error for the trial court to deny his motion to suppress the contents of an electronic organizer, and Roman argues that a statement he made to the police should have been suppressed because he was questioned in the absence of the warnings required by Miranda v. Arizona, 384 U.S. 436 (1966).
 
 
 7
 1. Conduct of the Trial Judge. Appellants claim that the trial judge demonstrated impartiality by (i) limiting cross-examination of a prosecution witness, (ii) giving an unfavorable and unnecessary jury charge in relation to the testimony of the same witness, and (iii) expressing anger at defense counsel during a sidebar conference.
 
 
 8
 "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits ... [on the scope of cross-examination] based on concerns about, among other things, harassment, prejudice, confusion of the issues ... or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). In this case, Judge Korman limited the extent to which defense counsel could question an agent of the United States Customs Service on the availability of wiretapping as an alternative investigatory technique. Specifically, although he was allowed to question the agent as to why other investigative tools had not been used, defense counsel was prohibited from continuing a line of questioning into why the Government did not try to get a wiretap order.
 
 
 9
 The limitation on the wiretap questioning did not demonstrate partiality. Judge Korman expressed concern that the line of questioning posed "a tremendous possibility for confusion.... It's very difficult to get wire tap orders [and] it's not something that's ordered in a routine way." The limitation decision was well within the Judge's discretion.
 
 
 10
 Nor is the claim of partiality aided by the reference to the jury charge in which the Court pointed out that there was no evidence to suggest that a wiretap order could have been obtained, and advised the jury that law enforcement techniques were not the jury's concern. Appellants argue that the charge gives the impression that the Court credited the prosecution and disbelieved the defense. That proposition is untenable, particularly in light of the fact that appellants do not contend that the charge is inaccurate.
 
 
 11
 Finally, the Judge's sidebar comment that the line of questioning was "ridiculous" did not deprive the defendants of a fair trial. Even if the Judge was expressing anger or annoyance and even if the comment might have been overheard by jury, reversal is not remotely warranted. This Court's "role ... is not to determine whether the trial judge's conduct left something to be desired, [n]or even whether some comments would have been better left unsaid. Rather, we must determine whether the trial judge's behavior was so prejudicial that it denied [the defendant] a fair, as opposed to a perfect, trial." United States v. Pisani, 773 F.2d 397, 402 (2d Cir.1985).
 
 
 12
 2. The Electronic Organizer. Aaron Mordukhaev was travelling in his car when he was pulled over and arrested. Customs agents removed and inventoried the contents of his automobile, including an electronic organizer, which was later found to contain the name, telephone numbers, and fax number of the Express Shipping Company. Because the agents had other evidence linking that company to the conspiracy, Aaron was interrogated on his relationship with Express Shipping. At first, he denied having any knowledge of the shipping company; however, after he was confronted with evidence linking him to the company, he admitted that he had taken some cars there.
 
 
 13
 After the interrogation, the agent prepared a written report, which stated:
 
 
 14
 At the time Aaron Mordukhaev have [sic] still denied having any knowledge of any stolen vehicles and of Express Shipping Incorporated, upon asking him of any [sic] entry in his appointment book to meet with Express Shipping, Incorporated on May 23, 1995, which included the two telephone numbers and a fax number for Express Shipping Incorporated in his electronic organizer, Aaron Mordukhaev then stated that in fact he did take some cars to Express Shipping.
 
 
 15
 Aaron claims that he admitted having taken cars to the shipping company only because the agent confronted him with evidence obtained through an illegal search of the electronic organizer, and that the contents of the organizer and the statement derived from that search should have been suppressed.
 
 
 16
 Insofar as Aaron is appealing the admission at trial of a computer printout of the contents of the organizer, that claim has been forfeited because it was not asserted at trial. Moreover, the computer printout was generated only when, some six months after Aaron's arrest, the Government applied for and received a search warrant for the organizer. Aaron did not challenge the propriety of that later search, and the computer printout was admitted at trial without objection.
 
 
 17
 As to the statement, Judge Korman found as a fact that the agent's questioning that elicited the statement was not derived from the contents of the organizer. The agent who elicited Aaron's statement testified that he confronted Aaron only with the contents of the appointment book and that at the time of the questioning the agent had no knowledge of the contents of the electronic organizer. It was not clearly erroneous for Judge Korman to credit the agent's testimony and make the factual determination that the statement was not derived from an illegal search of the organizer. See United States v. Thompson, 29 F.3d 62, 65 (2d Cir.1994).
 
 
 18
 3. Miranda. Approximately five months after the indictments in the present case, the New York State Police executed an unrelated search warrant at an auto-body shop owned by Aaron. The search uncovered certificates of title for the stolen vehicles that were the subject of the present conviction. Roman was present during the search. While the police were executing the warrant, they ordered everyone present not to move, and asked each person to state his name, date of birth, and business at the shop. No Miranda warnings were given at that time. At trial, Roman moved to suppress the statement, "I am the manager," which he made to the police officers in response to their questioning. Judge Korman denied the motion, ruling that Roman was not "in custody" and that even if he was in custody, the questioning sought only pedigree information and was not investigative.
 
 
 19
 Even if Roman was in custody (a police officer testified that Roman would not have been allowed to leave until he had identified himself, and that he was arrested when, and because, he identified himself as the manager), and even if the questioning was investigative (because made for the purpose of determining whom to arrest), any error in admission of the statement was harmless. See United States v. Quiroz, 13 F.3d 505, 512-13 (2d Cir.1993). The Government presented substantial evidence linking Roman to the conspiracy. For example, one of the shipping company employees identified Roman as one of the people who brought one of the stolen Jeeps to the shipping company. In addition, there was testimony that after his arrest, Roman admitted that he took cars to the shipping company. A fingerprint expert testified that the defendant's fingerprints were on an inspection report relating to one of the Jeeps. Admission of the "manager" response provides no basis for reversing the conviction.
 
 
 
 *
 Of the United States Court of Appeals for the Federal Circuit, sitting by designation